## GUNN, guardian, *et al., vs.* WOOLFOLK.

1. Where a cause on affidavit of illegality to an execution is pending between the parties, and leave is granted to withdraw the execution to be levied upon other property of the defendant, and that levy is made and the property is advertised for sale :

*Held*, that as the first illegality was not disposed of, but pending at the time of the second levy, sale under the second levy may be arrested by another affidavit of illegality, without conflict with the 31st rule of court.

2. Even if the last affidavit were a second affidavit in the sense of that rule, yet the advertisement and sale of the property could be arrested by such affidavit as illegal, because such advertisement and sale would transcend the authority to withdraw the execution in order to levy only, and that order being long subsequent to the first illegality, any ground of illegality founded thereon could not have been known when the first illegality was taken.

3. The facts that the first illegality has been long pending in court and that the transactions between the parties cover a considerable length of time, will not give equity jurisdiction so as to oust that of the common law court already acquired, if the issues be such as can as readily be adjudicated at law on the pleadings made, or which by amendment can be made, by affidavit of illegality.

4. Questions whether complainant be surety or guarantor and whether discharged or not by the conduct of the plaintiff in execution, are purely questions of law, and may be as well decided at law as in equity.

5. So whether complainant be discharged or not by the conduct of the plaintiff in the bankrupt court, and to what extent, or by the failure of the plaintiff to record the judgment so that another may have acquired priority of lien, and the amount of that lien, can as well be ascertained at law as in equity under the facts made by this record.

6. The writ of injunction, always to be cautiously granted, the effect which is to arrest a cause pending at common law in the county where the judgment was rendered and to transfer the venue to another county, should be used with greater caution, and should never be granted except on a strong case and in a pressing emergency ; and where the strength of the case and the pressure of the emergency rest on a threatened sale of property which can as well be stopped by an additional affidavit of illegality as by resort to injunction, the latter remedy should not be granted.

Illegality. Amendment. Levy and sale. Principal and surety. Injunction. Before Judge SIMMONS. Houston county. At Chambers. February 12th, 1881.

John W. Woolfolk filed his bill against D. F. Gunn *et al.*, alleging, in brief, as follows :

Complainant was the administrator of Daniel Gunn, deceased ; D. F. Gunn was the guardian of the other substantial defendants, who were children of the intestate. In settlement of part of the distributive shares of these children, complainant delivered to their guardian a note made by Thos. J. Woolfolk and James H. Woolfolk, the amount due on which, on April 14th, 1860, was $11,212.38, principal. D. F. Gunn, guardian, agreed to receive this note in settlement, if complainant would sign it as security, which the latter accordingly did. At that time both of the makers were solvent, and the amount of the note could readily have been realized out of their property ; and they so remained until 1869 or 1870, when they went into bankruptcy ; and even then there was ample property to pay the debt, had it been properly enforced. Shortly after the war, complainant notified D. F. Gunn to sue on the note and enforce its collection. D. F. Gunn delivered the note to one Bass, a young and inexperienced attorney, who brought suit on the note and at the October term, 1866, of Bibb superior court took a verdict, but failed to have it or any judgment placed on the minutes ; but, on the contrary, he put the papers in his pocket where he kept them for a long time. After taking the verdict, Bass went to Houston county where he showed it to Gunn, who told him to have an execution issued and to hold it without any steps to collect it. Under this advice, the *fi. fa.* was issued and held without further action until October, 1869, when it was levied imperfectly on certain land in the city of Macon. This and several other levies were abandoned because the *fi. fa.* was declared void.

At the May term, 1871, of Bibb superior court, the plaintiff in this judgment moved to have the verdict and judgment entered of record *nunc pro tunc.* This was resisted, and a counter-motion to set aside the judgment made. Plaintiff's motion was allowed. At the same term the judgment was, on motion, amended so as to include interest to the date of the verdict—it having been omitted from the original judgment. Complainant has no recollection of having notice of this last motion.

In the meantime several of the defendants began trafficking with James H. Woolfolk, each one trying to obtain the amount of his interest in the *fi. fa.*, to the injury of each other and of complainant. Large sums were actually paid to them on the *fi. fa.*, but never credited.

The irregularities in the issuing and levy of the *fi. fa.* have involved complainant and the makers of the note in litigation extending to the present time.

Large amounts of property belonging to the principal defendants were sold and transferred by them and their attorney, and the lien of the *fi. fa.* displaced therefrom—aggregating much more than enough to have settled the claim.

In 1869 James H. Woolfolk, one of the principal debtors, was adjudged a bankrupt. The debt on which this execution was based antedated the bankrupt act, and it was therefore unnecessary for the plaintiff to go into the bankrupt court. Nevertheless, the claim was proved in the bankrupt court, and thereby the lien of the *fi. fa.* on the bankrupt's property was released. This was done without the knowledge or consent of complainant. There is in the hands of Woolfolk's assignee a fund amply sufficient to pay this debt. If the *fi. fa.* be enforced against complainant, this fund will be paid out to other creditors of the bankrupt, and complainant will be irreparably damaged.

In 1872 property was sold under a junior *fi. fa.* against complainant and John and Thomas Woolfolk, and the

proceeds were held up for distribution. The sale realized $6,000.00 or $7,000,00, but the value of the property was much more. The attorney of the plaintiff in the present *fi. fa.* was not present at the sale, stating that he was absent on account of information received from the attorney controlling the junior *fi. fa.*

In 1879 a valuable tract of land in Jones county belonging to James H. and Thomas J. Woolfolk was found subject to this *fi. fa.*; but the plaintiff therein (defendant to this bill) agreed for a consideration to postpone the sale until the fall of 1880.

In the spring of 1880 a levy was made on complainant's property, which he now seeks to enjoin. The last entry on the *fi. fa.* prior to this was in 1869, and complainant insists that the *fi. fa.* is dormant. The original judgment against complainant was entered against him as a principal, while the amended judgment was against him as a security.

The prayer was for an injunction against the enforcement of the *fi. fa.* against his property, for general relief and subpœna. Discovery was waived.

The defendants answered separately, but the answer of D. F. Gunn contained the substance of the defense and was, in brief, as follows:

Complainant is not a mere security, but his obligation arose thus: He obtained property of Gunn's wards, and gave his note therefor amounting to $12,054.10. This was in 1857. Subsequently, in a settlement between them in regard to this note, Gunn, guardian, accepted the Woolfolk note now involved in controversy for $11,400.67, but required complainant ro add his signature thereto. Defendant knows nothing of the means of Thos. J. or James H. Woolfolk except that they held a considerable amount of land. Complainant never gave any written notice to sue, and at no time urged the pressing of the *fi. fa.* after it was obtained. In 1866 he made a verbal request to have suit brought. It was done at once, and

judgment promptly obtained. Counsel did not pocket the papers and hold them, nor did Gunn advise delay. The attorney took the papers from the clerk's office for a few days, in order to show the judgment to the defendants therein, hoping that they would pay it off without a levy. The papers were returned to the clerk during the term of court, and it was by no fault or neglect of the attorney that they were not entered of record. There never has been any delay or laches on the part of plaintiff or his wards, or their attorney in pressing the claim. The judgment has never been held void or otherwise than perfectly good, except by the judge of the United States circuit court, whose judgment was reversed by the supreme court of the United States. Defendants have received nothing on the *fi. fa.* except what is entered on it, and it is not true that any of them traded or trafficked to injure each other or the complainant. One of them agreed to take some land, enter a credit on the *fi. fa.* and account to another for his proportion thereof. This was done with the knowledge and consent of the complainant, and as the land brought its full value, he was benefitted. No securities of any sort have been released by defendants.

At the date of the issuance of the *fi. fa.* the state was under military control, and an order was issued by the military commander preventing levies and sales. This, with the relief and stay laws then in force, practically prevented the enforcement of the *fi. fa.* in 1867 and 1868. Thomas J. and J. H. Woolfolk frequently promised to pay the claim, but failed to do so. In 1869 the *fi. fa.* was levied on certain land in the possession of T. J. and J. H. Woolfolk, when they resisted collection by taking advantage of claims, affidavits under the relief laws, etc., and complainant joined in the defense with an affidavit of illegality. He also joined in opposing the amendment of the judgment, and here began the tedious round of litigation, which is still pending  The judgment is not dormant by reason of being thus delayed.

When the Woolfolks went into bankruptcy the assets of James H. went into the hands of a trustee, who sold them and brought into court the fund for distribution. The present defendants claimed it, and this claim was contested by I. C. Plant & Son, who held a mortgage junior to this judgment. The case is still pending with every prospect of a recovery by these defendants; but the amount will not be more than one-fifth enough to satisfy the *fi. fa.* This defendant, Gunn, is advised that the trustee in bankruptcy recovered a tract of land in Jones county, but the committee of creditors in charge of the administration of the bankrupt estate deemed it disastrous to force a sale without due advertisement, and therefore postponed it until the fall of 1880. Defendants had nothing to do with this, and even when sold the land will not more than half pay off the execution. At the time that James H. Woolfolk went into bankruptcy, what was the best course to pursue was a matter of grave doubt, and under competent legal advice, Gunn proved the claim. By amendment of his proof he subsequently reserved his lien.

Complainant amended his bill, alleging that this amendment of the proof in bankruptcy was void for want of notice to any one; also, that at the time of filing his orig inal affidavit of illegality to this execution, he was not aware of the facts concerning the proceedings in the bankrupt court, and had only recently learned of them; and further, that there had been a change in the parties holding the *fi. fa.*

To this amendment defendants answered, denying that they had lost their lien on any property of the defendants in *fi. fa.*, and alleging that if complainant had learned new grounds of illegality he did not need an injunction to set them up. They denied any change in the parties to the case, further than a change from a guardian to the wards who had been represented by him.

It is unnecessary to set out the testimony. The chan-

cellor granted the temporary injunction, and defendants excepted.

HILL & HARRIS ; BACON & RUTHERFORD, for plaintiffs in error.

HALL & SON; DUNCAN & MILLER; WHITTLE & WHITTLE for defendants.

JACKSON, Chief Justice.

The remedy of the defendant in error was complete at law for the reasons set out briefly in the syllabus to this cause.    Therefore the grant of this injunction to stay the judgment at law was an interposition of chancery not authorized by law, and it must be reversed.

Judgment reversed.